IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSHUA I. PAYNE,                              :      Civil No. 3:25-cv-1119
                                             :
              Plaintiff                       :      (Judge Mariani)
                                             :
       v.                                     :
                                             :
DR. CATELL, et al.,                           :
                                             :
              Defendants                      :

## MEMORANDUM

Plaintiff Joshua Payne ("Payne"), an inmate in the custody of the Pennsylvania

Department of Corrections ("DOC"), commenced this *pro se* civil rights action pursuant to 42

U.S.C. § 1983. (Doc. 1). His claims sound in Eighth Amendment deliberate indifference to

serious medical needs. (*Id.*). Named as Defendants are Wellpath Holdings, Inc., and Dr.

Cattell. (*Id.* ¶¶ 4, 5).

In November 2024, Defendant Wellpath filed for Chapter 11 bankruptcy in the United

States Bankruptcy Court for the Southern District of Texas ("Bankruptcy Court"). *In re:*

*Wellpath Holdings, Inc.*, No. 4:24-bk-90533 (Bankr. S.D. Tex.). Wellpath was discharged

pursuant to a Plan confirmed in the Bankruptcy Court. *See id.*, Bankr. Doc. No. 2596, May

1, 2025.

Before the Court is Wellpath's motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(1), or in the alternative, for judgment on the pleadings pursuant to Federal

Rule of Civil Procedure 12(c). (Doc. 16). Wellpath asserts that as provided in the

Bankruptcy Court's Order and Plan, all pre-petition claims against Wellpath were discharged and claimants, including Payne, are enjoined from pursuing claims outside the process set forth by the Plan. (Doc. 17; *see In re Wellpath Holdings, Inc.*, No. 24-bk-90533, Bankr. Doc. No. 2596). Wellpath seeks dismissal of the claims against it with prejudice. (*Id.*).

Payne failed to respond to Wellpath's motion and the time for responding has now passed.[1] Therefore, the motion is deemed unopposed and ripe for disposition. For the reasons set forth below, the Court will grant Wellpath's motion to dismiss and grant Payne leave to amend.

## I.    Factual Background

Payne alleges that he was diagnosed with Type-2 Diabetes and diabetic neuropathy on October 19, 2016. (Doc. 1 ¶¶ 7, 8). As a consequence of his diabetes, Payne alleges that he has issues with his skin, such as dry, flaky, and scaly skin on his feet and legs. (*Id.* ¶ 9).

On June 7, 2022, Payne asserts that he was transferred from the State Correctional Institution at Mahanoy ("SCI-Mahanoy") to the State Correctional Institution at Camp Hill ("SCI-Camp Hill). (*Id.* ¶ 11). Upon arrival at SCI-Camp Hill, Payne alleges that he informed the medical department of his skin issues and requested to see a dermatologist. (*Id.* ¶¶ 12, 13).

---

[1]    Payne was directed to file a brief in opposition to Defendant's motion and was admonished that failure to file an opposition brief would result in Defendant's motion being deemed unopposed. (Docs. 21, 24) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

On or about August 5, 2024, Payne saw Dr. Cattell at MD line for different chronic medical conditions. (*Id.* ¶ 14). During this visit, Payne alleges that he requested treatment by a dermatologist "so that his skin condition on his feet and legs could be properly treated." (*Id.* ¶ 15). Dr. Cattell allegedly told Payne that Wellpath would not allow him to see a dermatologist. (*Id.* ¶ 16). On that same date, Payne asserts that he submitted a grievance regarding the alleged refusal to be treated by a dermatologist. (*Id.* ¶ 17). The grievance was purportedly denied at all levels. (*Id.* ¶ 18).

On August 25, 2025, Payne asserts that he submitted a sick call request to notify the medical department that the prescribed medication, Eucerin, was not working. (*Id.* ¶¶ 19, 20). Payne asserts that he was not called to the medical department after submitting this request. (*Id.*). Therefore, on August 29, 2025, Payne submitted another sick call slip requesting to be treated because the Eucerin prescribed by Dr. Cattell was not working. (*Id.* ¶ 20). Despite submitting this second sick call slip, Payne alleges that he was not scheduled to be seen at sick line the following day. (*Id.* ¶ 21).

Payne further alleges that he continued to submit sick call requests to inform the medical department that the prescribed medications were not working and to request to be seen by a dermatologist. (*Id.*). He asserts that these requests were denied or unanswered. (*Id.*).

Payne alleges that Wellpath has a policy of denying or delaying medical treatment to inmates. (*Id.* ¶ 23).

3

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss an action for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the court's subject matter jurisdiction. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a facial challenge under Rule 12(b)(1), the standards associated with Rule 12(b)(6) are applicable. *See id.* In this regard, the court must accept all factual allegations in the complaint as true, and the court may consider only the complaint and documents referenced in or attached to the complaint. In a factual challenge to the court's subject matter jurisdiction, the court's analysis is not limited to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Instead, the court may consider evidence outside the pleadings, including affidavits, depositions, and testimony, to resolve any factual issues bearing on jurisdiction. *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997).

Once the court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists. *Mortensen*, 549 F.2d at 891. If a dispute of material fact exists, "the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction." *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 290 (3d Cir. 2006); *see also Berardi v. Swanson Mem'l Lodge No. 48*, 920 F.2d 198, 200

4

(3d Cir. 1990) (stating that a district court must ensure that a plaintiff has "had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing," to support his claim of jurisdiction (citation omitted)).

## III.    **Wellpath Bankruptcy**

Wellpath and its affiliated companies filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas on November 11, 2024, at case number 24-bk-90533. *In re: Wellpath Holdings, Inc.*, No. 4:24-bk-90533.  Subsequently, on May 1, 2025, the Bankruptcy Court issued Findings of Fact, Conclusions of Law, and Order (I) Confirming the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of Its Debtor Affiliates and (II) Approving the Disclosure Statement on a Final Basis.  (Doc. 16-2, the "Confirmation Order").

Under the Plan, all Claims and Causes of Action (as those terms are defined by the Bankruptcy Court) against Wellpath and its affiliated debtors were discharged, and all claimants were permanently enjoined from commencing or continuing any proceeding in connection with such claims, or enforcing recovery from, among others, the Debtors and Debtors' estates. *In re Wellpath Holdings, Inc.*, No. 24-bk-90533, Bankr. Doc. No. 2596 (Bankr. S.D. Tex. May 1, 2025).  The Plan became effective on May 9, 2025. *Id.*, Bankr. Doc. 2680 (Bankr. S.D. Tex. May 9, 2025).

On June 4, 2025, the Bankruptcy Court issued a General Form of Order Regarding Lift Stay Motions.  (Doc. 16-3, the "Stay Order").  The Stay Order clarified the impact of the Plan on actions against Wellpath and related entities.  (*See id.*).  Pursuant to Article IX.A. of the Plan and Paragraph 3 of the Stay Order, all claims and causes of action against Wellpath, among others, were discharged.  (*Id.* ¶ 3).  In addition, under Article IX.F of the Plan, holders of Claims and Causes of Action that are discharged or released were permanently enjoined from, among other things, continuing any action with respect to these claims or recovering any judgment with respect to such claims.  (*Id.* ¶¶ 4, 5; *see* Order Confirming Ch. 11 Plan, *In re Wellpath Holdings*, No. 24-bk-90533, Bankr. Doc. 2596 at 134, Article IX.F).

Further, Article IX.F of the Plan provides that holders of claims subject to the Third-Party Release who did not opt-out are permanently enjoined from "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan."  *See* Order Confirming Ch. 11 Plan, *In re Wellpath Holdings*, No. 24-bk-90533, Bankr. Doc. 2596 at 134, Article IX.F.  Those claimants who elected to opt out from the Third-Party Release could bring or continue to pursue claims against non-Debtor Defendants.  (*See* Doc. 16-3, Stay Order ¶ 5; *see* Order Confirming Ch. 11 Plan, *In re Wellpath Holdings*, No. 24-bk-90533, Bankr. Doc. 2596 at 134, Article IX.F).

As Wellpath notes in its brief in support of its motion to dismiss:

6

A Liquidating Trust has assumed the Debtors' liability for all General Unsecured Claims, including personal injury and wrongful death claims that arose before the Petition Date. Plan, Articles IV.N., VII; Confirmation Order at 2-3. The Liquidating Trust is funded solely by assets transferred to it under the Plan, and recoveries on such claims are limited to a pro-rata distribution from the Trust. Enjoined Parties may not seek payment for this liability from the Debtors, the Post-Restructuring Debtors, or the property of either entity beyond this distribution. *See* Plan, Article IV.N.; Stay Order, ¶ 4. Holders of Claims against the Debtors are subject to the Trust Distribution Procedures ("TDPs"), including the non-binding alternative dispute resolution process set forth therein to determine, if necessary, the allowed amount for their Claim. *Id.*

(Doc. 17, at 5; *see also* Doc. 16-3. Stay Order ¶ 4).

## IV.    Discussion

Wellpath was discharged from liability by the United States Bankruptcy Court for claims that arose before November 11, 2024. *See In Re Wellpath Holdings, Inc.*, No. 24-bk-90533 (Bankr. S.D. Tx.), Docs. 2596, 2679, 2680. Pursuant to 11 U.S.C. § 524(a)(2), "[a] discharge in a [Chapter 11 bankruptcy] case…operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."

The allegations in Payne's complaint relate to alleged inadequate medical care in August 2024, and as stated, Wellpath filed its Chapter 11 petition on November 11, 2024. (*See* Doc. 1). Therefore, Wellpath argues that its discharge in the Bankruptcy Court requires this Court to dismiss Payne's claims with prejudice because the claims predate its bankruptcy petition. (Doc. 17). Wellpath notes that "holders of Claims or Interests that

7

affirmatively elected to opt out of the Plan's Third-Party Release may bring or continue to pursue claims against the Non-Debtor Defendants, including employees of the Debtors or employees of the Post-Restructuring Debtors."[2]  (*Id.* at 4).

Thus, Payne cannot proceed against Wellpath itself following the bankruptcy discharge.  However, as part of Wellpath's Chapter 11 reorganization, a Liquidating Trust has assumed Wellpath's liability "for all General Unsecured Claims, including personal injury and wrongful death claims that arose prior to November 11, 2024."  Order Confirming Ch. 11 Plan, *In re Wellpath Holdings*, No. 24-bk-90533 (Bankr. S.D. Tex. May 1, 2025), Doc. 2596 at 107 (Assumption of General Unsecured Claims by the Liquidating Trust).  In an Order dated January 25, 2026, the Bankruptcy Court clarified that, in accordance with the Trust Distribution Procedures ("TDPs") adopted when confirming Wellpath's Chapter 11 Plan and establishing the Liquidating Trust:

> Holders of General Unsecured Claims arising from alleged pre-petition personal injury tort or wrongful death may proceed in the appropriate civil court and litigate such claim with the Trust included as a nominal defendant. As a nominal defendant, the Trust is not required to file answers, participate in discovery or hearings, or take an active role in any such litigation; provided, however, that nothing herein or in the Plan or TDPs shall prevent the Trust from participating in any such case at the direction of the Trustee or engaging in settlement discussions for purposes of determining stipulated Allowed Claim Amounts at the discretion of the Trustee.

---

[2]  Wellpath concedes in its brief that Payne has filed an opt out of the Third-Party Release with respect to any Wellpath employee defendant in this case, and that his claims may proceed against Defendant Dr. Cattel.  (Doc. 17, at 4 n.1).

Revised and Amended Clarifying Order, *In re Wellpath SF Holdco*, No. 24-bk-90566 (Bankr. S.D. Tx. Jan. 25, 2026), Doc. 1279 at 2 (cleaned up).

Accordingly, the Court will grant Wellpath's motion to dismiss based on the discharge of Payne's pre-petition claims in bankruptcy, and Wellpath will be terminated as a party to this action. As noted in the Bankruptcy Court's January 25, 2026 Order, a holder of an unsecured claim that arises from alleged pre-petition personal injury tort or wrongful death may proceed with and litigate such claim with the Liquidating Trust established by the Bankruptcy Court by including it as a nominal defendant. Therefore, the dismissal will be without prejudice to Payne's right to substitute the Trust as a nominal party in place of Wellpath and pursue his claims through the Liquidating Trust as instructed by the Plan.

## V.    Conclusion

For the foregoing reasons, the motion to dismiss filed by Wellpath (Doc. 16) will be granted and the claims against Wellpath will be dismissed. The Court will grant Payne leave to amend to properly reassert his claims against the Liquidating Trust, should he choose to do so.

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: May ___, 2026

9